**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMADOR COUNTY, CALIFORNIA**<br><br>    **Plaintiff,**<br><br>       **v.**<br><br>**S.M.R. JEWELL, Secretary of the UNITED STATES DEPARTMENT OF THE INTERIOR, et al.,**<br><br>    **Defendants.** | **Civil Action No. 05-00658 (BJR)**<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING THE UNITED STATES' CROSS-MOTION FOR SUMMARY JUDGMENT** |

## I.      INTRODUCTION

At the center of this dispute is a proposed gaming operation on the Buena Vista Rancheria of the Me-Wuk Tribe located in Amador County, California. In 2000, pursuant to the Indian Gaming Regulatory Act ("IGRA"), 25 U.S.C. §§ 2701-2721, the Secretary of the United States Department of the Interior (the "Secretary"), approved a gaming compact between the Me-Wuk Tribe and the State of California. The gaming compact was later amended in 2004 to provide for an expanded gaming operation. Although it had not challenged the 2000 gaming compact, Plaintiff, Amador County, challenges the Secretary's approval of the amended compact, claiming that the Buena Vista Rancheria does not qualify as "Indian land"—a requirement under the IGRA.

Currently before the Court are cross-motions for summary judgment. The Secretary argues that her approval of the amended gaming compact must be upheld because it is in accordance with the IGRA. First, the Secretary contends that Amador County is barred from contesting the Rancheria's reservation status under the IGRA because the County stipulated to the Rancheria's status as such in a settlement judgment in an earlier lawsuit between the County

and the Me-Wuk Tribe. Second, the Secretary argues that even if this Court were to determine that the stipulated judgment does not have preclusive effect in this lawsuit, her approval of the amended compact still must be upheld because Congress granted her the authority to determine what lands qualify as reservations for purposes of the IGRA.

Amador County, on the other hand, requests that this Court declare that the Buena Vista Rancheria is not Indian land under the IGRA and set aside the Secretary's approval of the amended compact. The County contends that it did not, and indeed could not, stipulate to the Rancheria's reservation status.  It further argues that even if it did stipulate to the Rancheria's reservation status, the stipulation does not have preclusive effect on the present litigation. Lastly, the County argues the term "reservation" as it is used in the IGRA is narrowly defined and the Buena Vista Rancheria does not fit within that narrow definition.

Having reviewed the parties' submissions, the record of the case, and the relevant legal authority, the Court concludes that: (1) Amador County stipulated that it would treat the Buena Vista Rancheria as a reservation; (2) Amador County is barred from arguing in this litigation that the Rancheria is not a reservation; and, alternatively, (3) the Secretary is authorized to declare that the Rancheria is a reservation for purposes of the IGRA. Therefore, the Court will DENY Amador County's motion for summary judgment and GRANT the Secretary's cross-motion. The reasoning for the Court's decision is set forth below.

## II.    BACKGROUND

This case is another small chapter in the continuing protean history of the relationship between Native American entities and the federal, state, and county governments with which they interact. In 1927 the United States purchased 67.5 acres of land in Amador County and held it in trust for the Me-Wuk Tribe. *Amador Cnty, Cal. v. Salazar*, 640 F.3d 373, 375 (D.C. Cir.

2011).[1] This land is commonly referred to as the Buena Vista Rancheria. However, in 1958, in keeping with the "then-popular policy of assimilating Native Americans into American society, Congress enacted the California Rancheria Act, which authorized the Secretary to terminate the federal trust relationship with several California tribes, including the Me-Wuk Tribe, and to transfer tribal lands from federal trust ownership to individual fee ownership." *Id.* (citing Act of Aug. 18, 1958, Pub. L. No. 85-671, 72 Stat. 619). Pursuant to the Act, the Secretary transferred title to the Buena Vista Rancheria to two Me-Wuk Tribe members. *Id.* In doing so, the Secretary "stripped the [Rancheria] of its reservation status." *Id.* at 383.

Twenty years later, members of the Me-Wuk Tribe joined members of sixteen other California rancherias and filed a class action lawsuit against the United States and several California counties to undo the effect of the California Rancheria Act. *See Hardwick v. United States*, No. C-79-1710 (N.D.Ca. 1979). The tribes sought equitable relief requiring the Secretary to: (1) "unterminate" each of the seventeen rancherias and (2) restore plaintiffs' "rights, privileges and immunities" as Native Americans under the United States Constitution. *Id.*, Second Amended Complaint at 26-27. The *Hardwick* lawsuit ended in a settlement between the tribes and the federal government and, subsequently, in a series of separate stipulated judgments between the individual tribes and the counties in which the tribes' rancherias are located. *Amador Cnty*, 640 F.3d at 376.

---

[1] In 1851, as a result of rapid settlement in California due to the discovery of gold, federal agents negotiated several treaties with California Indian tribes, each providing for the surrender of the tribes' native land holdings in return for smaller plots of land elsewhere in California. The California state legislature objected to the federal government's proposed land acquisitions and, as a result, Congress rejected the treaties. However, the Indians tribes had already surrendered their homes and started their journey to the proposed new lands (having been reassured by the federal agents that Congress would confirm the treaties). Therefore, the tribes became homeless. Nearly sixty years later, California citizens sympathetic to the economic and physical distress of the homeless Indians urged Congress to pass legislation to acquire isolated parcels of land for the Indians. As a result of this lobbying, between 1906 and 1927, Congress passed several land acquisition acts that provided funding for the purchase of the land. The land acquisitions resulted in what is referred to as the Rancheria System in California. *See* Cohen's Handbook of Fed. Indian Law at § 1.03[5], 58-59 (2012).

In the first settlement—the August 2, 1983 settlement between the tribes and the federal government—the federal government agreed to: (1) restore Indian status to the *Hardwick* plaintiffs and confirm that these individuals and/or communities are entitled to the benefits and services provided by the federal government, (2) confirm that the distribution plans for the seventeen rancherias had "no further force and effect" and would not be further implemented, and (3) accept the assets of the seventeen rancherias if any of the plaintiffs elected "to restore such interest to trust status" with the United States. Dkt. No. 76, Ex. 4 at ¶¶ 3-10.

In the sequent stipulated judgment—the May 14, 1987 settlement between the Me-Wuk Tribe and Amador County—the parties agreed that: (1) the Buena Vista Rancheria had not been "lawfully terminated under the California Rancheria Act," (2) the original boundaries of the Rancheria would be restored, it would be considered "Indian Country," and treated "as any other federally recognized Indian Reservation," (3) "all of the laws" that pertain to federally recognized Indians and/or Indian tribes would also apply to the Rancheria, and (4) if any Indian owned Rancheria land was returned to trust status with the United States by the end of 1988, the County would refund previously paid property taxes and refrain from assessing further taxes (so long as proper exemption forms were filed each tax year). *Hardwick v. United States*, No. C–79–1710, Dkt. No. 214 at ¶¶ 2, C-E, G.

Thereafter, the Me-Wuk Tribe began planning a gaming operation on the Buena Vista Rancheria. *Amador Cnty.*, 640 F.3d at 376. In 1999, the Tribe completed its initial round of negotiations with the State of California and, in 2000, the Secretary approved the resulting gaming compact pursuant to the IGRA. *Id.* at 377. Amador County did not object to the 2000 gaming compact. In 2004, the Tribe began a second round of negotiations with the State of California, which resulted in an amended compact that provided for the construction of a casino.

*Id.* When the Tribe submitted the amended compact for approval to the Secretary, the Secretary took "no-action," which, as provided in the IGRA, meant that the amended compact was deemed approved after forty-five days. *Id.* The Secretary published a notice of approval in the Federal Register on December 20, 2004. 69 Fed. Reg. 76,004.

Amador County filed the instant lawsuit in 2005. The matter was originally assigned to the Honorable Richard W. Roberts. The Secretary moved to dismiss the complaint, arguing that Amador County had failed to state a claim for relief because the Secretary's "no-action" decision is not reviewable under the Administrative Procedure Act ("APA"). Judge Roberts accepted the Secretary's argument and dismissed the lawsuit. Amador County appealed and the D.C. Circuit reversed, holding that the Secretary's "no-action" approval of the gaming compact is reviewable under the APA. *Id.* at 383.

Having determined that the Secretary's "no-action" approval is reviewable, the D.C. Circuit turned to the merits of the case. First, the Circuit Court observed that the "sole question at issue" in this case is whether the Buena Vista Rancheria qualifies as "Indian land" for purpose of the IGRA. *Id.* "[I]f it does," the Circuit Court noted, the parties agree that "the Secretary had authority to approve the compact." *Id.* at 383. The Circuit Court further observed that the parties agree that, under the facts of this case, the Buena Vista Rancheria "can qualify as 'Indian land' only if it is an 'Indian Reservation.'" *Id.* Finally, the Court stated, whether the Buena Vista Rancheria is a reservation "turns, and again the parties agree about this, on the effect" that the May 14, 1987 stipulated judgment between the Me-Wuk Tribe and Amador County in the *Hardwick* case has on the present lawsuit. *Id.* The Court stated:

> [A]lthough the California Rancheria Act stripped the [Buena Vista Rancheria] of its reservation status, the County agreed in the *Hardwick* Judgment that the [Buena Vista] Rancheria and the [Me-Wuk Indians] were never and are not now lawfully terminated under the California Rancheria Act, that the original

boundaries of the [] Rancheria ... are hereby restored, that all the land within these restored boundaries…is declared "Indian Country," that the [Buena Vista] Rancheria shall be treated by the County of Amador and the United States of America, as any other federally recognized Indian Reservation, and [that] all of the laws of the United States that pertain to federally recognized Indian Tribes and Indians shall apply to the [Buena Vista] Rancheria and the Me-Wuk Tribe. These provisions, the Secretary argues, preclusively establish that the Rancheria qualifies as "Indian land." Disagreeing, the County contends that these sweeping provisions must be construed and interpreted in light of the issue[] being litigated—the County's ability to assess property taxes on the former Rancheria lands. The *Hardwick* Judgment, the County insists, is therefore of no consequence in the context of this litigation challenging the Secretary's approval of the compact.

*Id*. at 383-384 (internal quotations omitted).

The Circuit Court recognized that the 1987 *Hardwick* judgment is a stipulated judgment (*i.e.*, the parties reached judgment through consent rather than litigation). *Id*. at 384. Nonetheless, the Circuit Court observed, "'[p]reclusion is appropriate when the stipulation clearly manifests the parties' intent to be bound in future actions.'" *Id*. at 384 (quoting *Otherson v. Dep't of Justice, INS*, 711 F.2d 267, 274 n. 6). "[T]he scope of preclusion by settlement arises from contract," and courts "measur[e] intent by ordinary contract principles." *Id*. (quoting Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 4443, n. 21). Therefore, the Circuit Court concluded, because Judge Roberts "never considered the scope of the County's intent to be bound" by the 1987 *Hardwick* judgment, and because "intent is a question of fact that may turn not only on the language of the agreement, but also on extrinsic evidence not yet in the record," the Circuit Court remanded the case "to give the district court an opportunity to assess the merits in the first instance." *Id*.

On remand, the matter was reassigned to this district court judge. Thereafter, the Me-Wuk Tribe filed a motion to intervene for the limited purpose of moving to dismiss this lawsuit. Dkt. No. 59. This Court denied the motion; the Tribe appealed to the D.C. Circuit, which

affirmed this Court's order. *Amador Cnty., Cal. v. U.S. Dep't of the Interior*, 772 F.3d 901 (D.C. Cir. 2014). The parties' cross-motions for summary judgment are now fully briefed and ready for review.

## III.     STANDARD OF REVIEW

Amador County brings this lawsuit pursuant to the Administrative Procedure Act ("APA"). Generally, claims brought pursuant to the APA are appropriately decided on summary judgment based solely upon the administrative record that existed at the time of the agency's decision. *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-44 (1985). The reviewing court does not resolve factual issues, but instead determines whether, as a matter of law and based on the administrative record, the agency was permitted "to make the decision it did." *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (quoting *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985)). However, this is not a typical APA case. Here, as discussed above, the D.C. Circuit remanded this matter specifically for a factual determination with respect to the parties' intent in executing the 1987 *Hardwick* stipulated judgment. *Amador Cnty*, 640 F.3d at 384.  It is not the administrative record that is determinative of this issue; rather, this Court must consider documents outside the administrative record and judicially noticeable matters that are germane to the remand question.

## IV.     DISCUSSION

The D.C. Circuit's remand mandate is clear: this Court must "consider[] the scope of [Amador] County's intent to be bound by" the May 14, 1987 *Hardwick* stipulated judgment with the Me-Wuk Tribe (hereinafter, "the *Hardwick* Judgment"). *Amador*, 640 F.3d at 384. Specifically, did Amador County stipulate that it would treat the Buena Vista Rancheria as a

reservation, and if so, did the County intend to be bound by that stipulation in future actions. This Court concludes that the answer to both questions is yes.

**A.      Amador County Agreed to Treat the Buena Vista Rancheria as a Reservation**

As noted above, the *Hardwick* Judgment is a stipulated judgment. In other words, the judgment was reached through agreement by the parties rather than litigation. Generally, "when an issue of fact or law is actually litigated and determined by a valid and final judgment, the determination is conclusive in a subsequent action. . .whether on the same or a different claim. *Amador Cnty*, 640 F.3d at 384 (quoting Restatement (Second) of Judgment § 27). There can be preclusion in a stipulated judgment "when the stipulation clearly manifests the parties' intent to be bound in future actions." *Id*. (quoting *Otherson*, 711 F.2d at 274 n. 6).

A settlement agreement is a contract and is, therefore, governed by the legal principles that apply to contracts. *Gorman v. Holte*, 164 Cal. App. 3d 984, 988 (1985) (compromise settlements are governed by the legal principles applicable to contracts generally); *see also*, *Weddington Productions, Inc. v. Flick*, 60 Cal. App. 4th 793, 810–811(1998) (same).[2] "The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract must give effect to the 'mutual intention' of the parties." *Canaan Taiwanese Christian Church v. All World Mission Ministries*, 211 Cal. App. 4th 1115, 1124 (2012). Such intent is inferred, if possible, solely from the written provisions of the contract. *Waller v. Truck Ins. Exchange, Inc*., 11 Cal. 4th 1, 18 (1995). However, if the contract is ambiguous, the court may consider extrinsic evidence. *Nish Noroian Farms v. Agricultural Labor Relations Bd*., 35 Cal. 3d

---

[2] The D.C. Circuit interprets settlement agreements under the local law of the jurisdiction where the settlement agreement is to be enforced. *See Makins v. District of Columbia*, 277 F.3d 544, 548 (D.C. Cir. 2002) ("[W]e adopt local law in determining whether a settlement agreement should be enforced."). As such, California law governs here.

726, 735 (1984) ("The factual context in which an agreement was reached is also relevant to establish its meaning unless the words themselves are susceptible to only one interpretation.").

The following are the relevant terms of the *Hardwick* Judgment with respect to whether Amador County agreed to treat the Buena Vista Rancheria as a reservation:

1. The Rancheria was "never and [is] not now lawfully terminated under the California Rancheria Act."

2. The original boundaries of the Rancheria are "hereby restored."

3. All land within the Rancheria is "declared to be 'Indian Country.'"

4. The Rancheria shall be treated by the County and the United States "as any other federally recognized Indian Reservation."

5. "[A]ll of the laws of the United States that pertain to federally recognized Indian Tribes and Indians shall apply to" the Rancheria.

*Hardwick* Judgment at 4 ¶¶ 2-3, C-D (underline in original). The Judgment further defines "Indian Country," in relevant part, as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government" and "all Indian allotments, the Indian titles to which have not been extinguished." *Id*. at 2 ¶ G (citing 18 U.S.C. § 1151 (ed. 1986)).

The Secretary argues that these provisions unambiguously establish that the *Hardwick* Judgment restored the Buena Vista Rancheria to its pre-termination status and that the County agreed to treat the Rancheria as any other federally recognized reservation. Dkt. No. 77 at 34-35. The County, on the other hand, interprets the *Hardwick* Judgment as an attempt to "create or authorize [a] new Indian reservation[]." Dkt. No. 76 at 21. The County argues that the *Hardwick* Judgment fails to "create" a new Indian reservation on the Buena Vista Rancheria for the following reasons. First, the County claims that it and the Me-Wuk Tribe lacked the authority to create reservation status for the Rancheria simply by stipulating to such in the *Hardwick* Judgment. Second, in the County's view, because the United States was not a party to the

*Hardwick* Judgment, any attempt by the parties to the Judgment to declare that the Rancheria is a reservation is void. *Id*. Lastly, the County argues that whether the Rancheria is a reservation is a "[c]onclusion of law," and as such, can only "be reached by the courts" (as opposed to stipulated to by private parties) and thus the stipulation is not a binding agreement. *Id*.

Because the parties dispute the meaning of the *Hardwick* Judgment, this Court must consider the plain language of the parties' agreement and determine whether the words, given their ordinary meaning, create an ambiguity. *See American Alternative Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006). "A contract is ambiguous if it is susceptible of two different and reasonable interpretations, each of which is found to be consistent with the contract language." *Community Heating & Plumbing Co., Inc. v. Kelso*, 987 F.2d 1575, 1579 (Fed. Cir. 1993). Here, the Judgment unambiguously states that the: (1) boundaries of the Buena Vista Rancheria "are hereby restored," (2) the Rancheria "is declared…'<u>Indian Country</u>,'" (3) it will be treated "as any other federally recognized Indian Reservation," and (4) that all of the federal laws that apply to Indians will also apply to the Rancheria. *Hardwick* Judgment at 4 ¶¶ C-D (underline in original). Further, the Judgment defines "Indian Country" as "all land within the limits of any Indian *reservation* under the jurisdiction of the United States Government" and "all Indian allotments, the Indian titles to which have not been extinguished[.]" *Id*. at 2 ¶ G (citing 18 U.S.C. § 1151) (emphasis added). Considering the ordinary meaning of these words—as this Court must do—it is clear that the County intended to treat the Rancheria as a reservation. There is simply no ambiguity in the *Hardwick* Judgment.

However, as noted above, the County does not read the *Hardwick* Judgment as simply agreeing to treat the Rancheria as a reservation; rather, the County argues that the Judgment is an attempt to "create [or] authorize" a new Indian reservation by "confer[ing]" reservation status on

the Rancheria. Dkt. No. 76 at 21. As such, the County argues, the Judgment is "fatally flawed" because "a stipulated judgment, which is essentially a contract [] is an entirely inappropriate vehicle to confer that legal status which can only be designated pursuant to the [Indian Reorganization Act]." *Id*. at 22, 21. In making this argument, the County expends a tremendous amount of energy discussing whether the Buena Vista Rancheria is or ever was an Indian reservation (analyzing, among other legal authority, the California Four Reservations Act of 1864, the Mission Indians Relief Act of 1861, the Land Appropriations Acts of 1907-1927, and the Indian Reorganization Act of 1934), Congress' and the Secretary's authority to designate reservation status, and the definition "reservation" as the term is used in the IGRA.

However, none of this is relevant to the impact the *Hardwick* Judgment has on this litigation. First, because the *Hardwick* Judgment is unambiguous, the Court cannot consider such extrinsic evidence. Nevertheless, even if the Court were to consider such evidence, the County's argument misses the point. While the Court agrees with the County's general assertion that private parties cannot stipulate to the creation of a new Indian reservation, that is not what the parties did. In executing the *Hardwick* Judgment, the parties were not usurping the Secretary's authority and creating a new reservation—indeed, nowhere in the Judgment do the parties declare that the Rancheria *is* a reservation. The parties do declare that the Rancheria is "Indian County" (as "defined by 18 U.S.C. §1152"), but as the County points out, that definition encompasses more than reservations. *Id*. at 2, ¶ G, 4, ¶ C; Dkt. No. 76 at 23 (noting that [r]eservations are but one type of land status of several composing 'Indian County'"). Instead, in executing the *Hardwick* Judgment, the parties simply agreed that the County will *treat* the Rancheria "as any other federally recognized Indian Reservation." *Hardwick* Judgment at 4, ¶¶ C-D. Therefore, whether the fact that the Rancheria was purchased with funds appropriated

under the Land Appropriations Act of 1914 means that the Rancheria is an "Indian community" as opposed to a reservation, or whether the Rancheria is held in trust status by the United States, is not relevant to the question of whether the County agreed to treat the Rancheria as a reservation.

Next, the County argues that the *Hardwick* Judgment is not enforceable because it "purports to bind the United States of America, a co-Defendant in the *Hardwick* litigation but a non-party to the [*Hardwick* Judgment]." Dkt. No.76 at 23. According to the County, the United States "may not avoid its own statutory and regulatory obligations by now purporting to consider itself legally and administratively bound" by the *Hardwick* Judgment. *Id.* This argument, as set forth by the County in its brief, is not entirely clear. It appears that the County is arguing that the United States cannot ignore the process for creating a reservation under the Indian Reorganization Act by simply agreeing to be bound by a stipulation that purports to create a reservation.  However, in making this argument, the County once again misinterprets the *Hardwick* Judgment and the Secretary's contention regarding the same. Again, the Secretary is not arguing that the Judgment *created* a reservation; she is arguing that the County is bound by its agreement with the Me-Wuk Tribe to *treat* the Rancheria as a reservation. For the reasons set forth above, this Court agrees with the Secretary,

Lastly, the County argues that the *Hardwick* Judgment is not enforceable because whether the Buena Vista Rancheria is a reservation is a "legal conclusion" that cannot be stipulated to by private parties. Once again, this argument misses the point. The parties did not stipulate, as a matter of law, that the Rancheria is an Indian reservation, the County simply agreed to treat it as such. For the foregoing reasons, the Court concludes that the *Hardwick*

Judgment unambiguously sets forth the parties' intent that the County would treat the Buena Vista Rancheria as a reservation.

**B.    The Parties Intended the *Hardwick* Judgment to Bind Them in Future Actions**

Next, Amador County argues that even if this Court concludes that it did stipulate that it would treat Buena Vista Rancheria as a reservation, the "County did not intend…to be bound by [the stipulation] for gaming-related purposes." Dkt. No.76 at 25. Instead, the County argues, its intent in entering the *Hardwick* Judgment was simply to resolve outstanding real property tax issues between it and the individual property owners of the land within the Rancheria's boundaries. *Id*. (stating that paragraphs E-G of the *Hardwick* Judgment are the "only substantive obligations undertaken by the County and they are <u>each related to the collection of taxes</u> by the County") (emphasis in original). The County also once again argues that reservation "status cannot simply be stipulated to in civil litigation[.]" *Id*. at 24.

Once more, this Court is not persuaded by the County's arguments. First, the *Hardwick* Judgment does not state that the County will treat the Rancheria as a reservation for tax purposes only. In fact, there is nothing in the structure of the Judgment that indicates any limitation to the scope of the provisions relating to the County's treatment of the Rancheria as a reservation. To the contrary, the Judgment states that "*all* of the laws of the United States that pertain to federally recognized Indian Tribes and Indians shall apply" to the Rancheria. *Hardwick* Judgment at 4 ¶ D (emphasis added). As to the County's second argument—that the Judgment cannot be read to create reservation status because private parties cannot create reservation status—the Court has already rejected this argument. Again, the issue here is not whether the *Hardwick* Judgment created, as a matter of law, reservation status for the Buena Vista Rancheria, but whether the County is precluded from treating it as anything other than a reservation. The

Court finds that the County is so precluded. As the D.C. Circuit observed "[p]reclusion is appropriate when the stipulation clearly manifests the parties' intent to be bound in future actions." *Amador Cnty*, 640 F.3d at 384. Here, the parties unambiguously stipulate that the Rancheria "shall be treated by the County . . . as any other federally recognized Indian reservation" and that "all" federal laws that apply to Indians and Indian Tribes will also apply to it. *Hardwick* Judgment, at 4, ¶ D.

> ### C. The Extrinsic Evidence Does Not Support the County's Interpretation of the *Hardwick* Judgment

Even if this Court were to find the *Hardwick* Judgment ambiguous and consider extrinsic evidence as the County urges the Court to do, such evidence demonstrates that the County intended to treat the Rancheria as a reservation and that the parties intended the *Hardwick* Judgment to cover future agreements. First, the Court notes that the County listed as an affirmative defense to the Second Amended Complaint in the *Hardwick* litigation that it has "at least since 1970" (before which no official County records exist) "recognized the Buena Vista Rancheria as 'Indian Country.'" *Hardwick v. United States*, No. C-79-1710, Dkt. No. 179 at 6 ¶ 21. Second, the County did not object to the Secretary's approval of the original gaming compact in 2000. It was only after the gaming compact was amended in 2004 to accommodate the construction of a casino that the County claimed that the Rancheria does not constitute Indian lands under the IGRA, a requirement that also existed in 2000. Finally, in 2001, the County entered into an intergovernmental services agreement with the Me-Wuk Tribe regarding the 2000 gaming compact. In this agreement, the parties repeatedly refer to the Buena Vista Rancheria as a reservation. Dkt. No. 77 at 1-2, 4 ("the Tribe intends to open a Class III gaming facility and entertainment facility on Indian lands within the Reservation"; "The Project consists of the construction and operation of a Class III gaming and entertainment facility [and other related

structures] on approximately 30 acres located inside the Tribe's Reservation"; "The Tribe has taken appropriate action to determine whether the project will have any significant adverse impacts on the off-reservation environment"; "Buena Vista Road is the access route to the Reservation").

Nor is the Court persuaded by the County's contention that when it executed the *Hardwick* Judgment, it "could not have intended, or even contemplated" that the Judgment "would impact whether the Rancheria would qualify as "Indian lands" under the IGRA because the IGRA was not enacted until seventeen months after the County entered into the *Hardwick* Judgment. *Id*. at 26. While it is true that the IGRA was not enacted by Congress until seventeen months after the County executed the *Hardwick* Judgment, the debate surrounding gaming on Indian lands was well underway by the time the County signed the Judgment. The IGRA was enacted as a result of the Ninth Circuit's holding in *Cabazon Band of Mission Indians v. County of Riverside* that California and Riverside County lacked authority to regulate gaming on two Indian reservations, and this decision was reached fifteen months before the County entered into the *Hardwick* Judgment. *Cabazon Band of Mission Indians v. County of Riverside,* 783 F.2d 900 (9th Cir. 1986); *see also*, *Michigan v. Bay Mills Indian Community*, 134 S.Ct. 2024, 2034 (2014). In addition, this Court presumes that the County was aware that the United States Supreme Court affirmed the *Cabazon* decision in February 1987, three months before the County executed the *Hardwick* Judgment. *California v. Cabazon Band of Mission Indians*, 480 U.S. 202, 221–222 (1987). Thus, there is simply no basis to carve out gaming operations from the "all laws" provision in the Judgment.

**D.     The Secretary Has the Authority to Determine Whether the Buena Vista Rancheria Is a Reservation for Purposes of the IGRA**

While the language of the Circuit Court opinion necessitated that this Court focus *ab initio* on the preclusive effect of the *Hardwick* Judgment, even if this Court were to determine that the Judgment does not have preclusive effect on this litigation, the Secretary would still be entitled to summary judgment. This is because Congress specifically delegated to the Secretary the authority to determine whether a track of land is a "reservation" for purposes of the IGRA. *See* Pub. L. No. 107-63, § 134 (2001), 115 Stat. 414 ("The authority to determine whether a specific area of land is a "reservation" for purposes of [the IGRA], was delegated to the Secretary of the Interior on October 17, 1988."); *see also*, *City of Rosenville v. Norton*, 348 F.3d 1020, 1029 (D.C. Cir. 2003) (Congress has enacted legislation delegating to the Secretary "the authority to determine whether land is a 'reservation'" for purposes of the IGRA).

Here, the parties agree that if the Buena Vista Rancheria qualifies as an "Indian reservation" under the IGRA, the Secretary had the authority to approve the amended gaming compact. *Amador Cnty*, 640 F.3d at 383. It is beyond dispute that the Secretary has, at least since June 12, 1935, considered the Rancheria a reservation.[3] On that date, the Secretary facilitated a vote among the Me-Wuk Tribe members of the Buena Vista Rancheria pursuant to the Indian Reorganization Act's mandate that a vote be conducted on each "reservation" to give the adult tribe members an opportunity to reject the Act. 25 U.S.C. § 478; Theodore H. Haas, Ten Years of Tribal Government under I.R.A., U.S. Indian Service Tribal Relations Pamphlets 1 (1947) at 15. The vote was held precisely because the Secretary considered the Rancheria a reservation.

Indeed, the Secretary's own regulations define "reservation" for purposes of Section 2703(4) of the IGRA, in pertinent part, as: "[l]and of Indian colonies and rancherias (including

---

[3] With the exception, of course, of the short time that the Rancheria was unlawfully terminated under the California Rancheria Act.

rancherias restored by judicial action) set aside by the United States for the permanent settlement of the Indians as its homeland." This definition demonstrates that the Department considered the Buena Vista Rancheria a reservation for purposes of the IGRA.[4]

But, of course, the gold star evidence that the Secretary considered the Rancheria a reservation under the IGRA is the fact that it approved the gaming compact in 2000 and the amended compact in 2004. The IGRA permits gaming only on "Indian Lands." *Amador Cnty*, 640 F.3d at 377 (quoting 25 U.S.C. § 2710(d)(1) ("Class III gaming activities shall be lawful *on Indian Lands*…" (emphasis added)). The IGRA defines "Indian Lands" as either lands held in trust by the United States for the benefit of an Indian or Indian tribe or lands "within the limits of any Indian reservation." 25 U.S.C. § 2703(4). The parties do not dispute that the Buena Vista Rancheria is not held in trust; therefore, the Secretary necessarily must have determined that the Rancheria is a reservation. Given that Congress has unambiguously delegated to the Secretary the authority to determine whether land is a reservation for purposes of the IGRA (something the County does not dispute), the Secretary is entitled to summary judgment on this matter.

## V.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS the United States' cross-motion for summary judgment and DENIES Plaintiff's motion for summary judgment.

Dated this 16th day of March, 2016.

*Barbara J Rothstein*
_____
Barbara Jacobs Rothstein
U.S. District Court Judge

---

[4] This regulatory definition is not precisely implicated in this case because the Buena Vista Rancheria was a reservation at the time of IGRA's enactment, rendering Section 2719 of the Act inapplicable to the present dispute. Nevertheless, the definition is strong evidence of the Buena Vista Rancheria's reservation status in the eyes of the Department.